**Charles J. BAKER, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

Civ. A. No. 92–44J.

United States District Court, W.D. Pennsylvania.

Oct. 20, 1993.

Stephen D. Wicks, Altoona, PA, for plaintiff.

Thomas H. May, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, for defendants.

## OPINION and ORDER

BROOKS SMITH, District Judge.

### I. Introduction

Plaintiff Charles J. Baker ("Baker") alleges that he was constructively discharged from his job in defendant Consolidated Rail Corporation's ("Conrail") audiovisual department on the basis of his age, and subsequently replaced by a younger employee, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as amended, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* Plaintiff seeks damages consisting of estimated lost wages, future wages and retirement benefits. This matter is currently before the Court on defendant's Motion for Summary Judgment (Docket No. 10). Jurisdiction over plaintiff's federal claims is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), and over his state law claims pursuant to the doctrine of pendent jurisdiction.

### II. Background

In June of 1979, Charles Baker was hired by Conrail to work as a training specialist in that company's Altoona, Pennsylvania video studio. In November or December of 1989, Baker, then 57 years old, received a letter from Richard Sullivan, a Vice President in charge of the Resource Development Department, advising him of Conrail's new early retirement program. Baker Deposition at 18; Sweetland Deposition at 29. Although plaintiff was aware of the January 31, 1990 cut-off date for accepting early retirement, he did not attend an explanatory meeting about early retirement held in Altoona, and was not initially interested in availing himself of the program. Baker Deposition at 20.

Sometime during January 1990, before the cut-off date for accepting early retirement, David Sweetland, one of Baker's supervisors, informed plaintiff that it appeared unlikely that the Altoona video studio would continue to be funded at previous levels. Baker Deposition at 23. Horace Bothum, plaintiff's immediate supervisor, received a copy of the 1990 budget "very late" in 1989, but did not at that time discuss either the 1990 budget constraints or the early retirement program

with Baker. Bothum Deposition at 38–41. Conrail had only budgeted its Altoona video studio for the first three months of 1990, and this fact was confirmed to plaintiff in another conversation with Sweetland in "late January" of that year. Baker Deposition at 29. In light of this information, plaintiff accepted early retirement on January 20, 1990, effective March 1, 1990. In late-February of 1990, the Altoona video studio was audited one last time before being closed by Conrail's Resource Development Department. Baker Deposition at 35–36; Pretrial Stipulation at ¶ 13.

In late March of 1990, Conrail's Altoona video studio was reopened under the supervision of its Information Systems Department. Pretrial Stipulation at ¶ 14. On or about March 26, 1993, plaintiff and Conrail entered into a three month contract, pursuant to which Baker would provide audiovisual consulting services for Conrail at the rate of $22.00 per hour. Baker Deposition at 37, 40, 50–51. Plaintiff did perform consulting services for Conrail from March 27, 1990 through October 9, 1990, first under the terms of the March 26, 1990 contract, and then under subsequent contract extensions. Baker Deposition at 51–52.

On September 17, 1990, during the period Baker was consulting for Conrail, defendant hired 26 year old Thomas Concannon to work in the Altoona video studio. Part of plaintiff's work as a consultant was to train Concannon in the duties of audiovisual specialist; when plaintiff had done that, Conrail terminated its consulting arrangement with him. Kabo Deposition at 16–17.

Plaintiff filed an age discrimination charge with the Pennsylvania Human Relations Commission (PHRC) on June 20, 1991, which charge was accepted for filing by the Equal Employment Opportunity Commission ("EEOC") as of the same date. On February 20, 1992, the EEOC issued its determination that Baker was not discriminatorily discharged by defendant Conrail because of his age. Pretrial Stipulation at ¶ 22. Plaintiff filed his complaint in this action on February 26, 1992.

III. *Discussion*

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment "... if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[T]he requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue of fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514; *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987). The presence or absence of any plausible motive to engage in conduct is relevant to whether a genuine issue of fact exists within the meaning of Rule 56(e). *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 597, 106 S.Ct. 1348, 1361, 89 L.Ed.2d 538 (1986).

Once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories, etc., in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark, supra* 812 F.2d at 144. In determining whether an issue of material fact does exist, all inferences must be drawn in favor of the non-moving party. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

Defendant's attack on plaintiff's claims is two-pronged. First, defendant contends that plaintiff's complaint was not filed with the EEOC within the 300 day statute of limitations, *see* 29 U.S.C. §§ 626(d), 633(b), and is therefore time-barred. Second, defendant argues that plaintiff has adduced no evidence that Conrail's employment decision was pretextual. Plaintiff disputes the alleged untimeliness of his complaint, and further suggests that the issue whether Conrail's early retirement program was pretextual *vel non* is irrelevant. Rather, plaintiff avers that defendant untruthfully represented the future status of the Altoona video department, which misrepresentations induced him to retire, and that this fraudulent inducement was actionable discrimination. Plaintiff's Brief in Opposition to Motion for Summary Judgment at 11.

### 1. *Statute of Limitations*

■ 29 U.S.C. § 626(d) provides:

No civil action may be commenced under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 633 provides that in a case of alleged unlawful age discrimination occurring in a State which by law prohibits age discrimination in employment and has established a government agency with authority to grant or seek relief from such practices, no suit may be brought under 29 U.S.C. § 626 until 60 days after the plaintiff has first filed a charge with the state agency, and either sixty days elapses or that state agency terminates its proceedings. Because Pennsylvania does prohibit age discrimination in employment, 43 P.S. § 955(a), and has created the PHRC to administer the Pennsylvania Human Relations Act, 43 P.S. § 956, section 626(d)(2) applies, and Baker must have filed his charge with the EEOC within 300 days from Conrail's alleged unlawful practice.

The parties disagree over exactly which of Conrail's alleged actions constituted the unlawful employment practice that triggered the 300 day statute of limitations. Defendant contends that plaintiff's claim is one for a constructive discharge, precipitated by the information that the Altoona video studio's budget would be severely curtailed in 1990. Under defendant's scenario, the statute of limitations began running no later than March 1, 1990, the effective date of Baker's retirement, and plaintiff's June 20, 1991 charge filed with the PHRC was therefore untimely filed. Memorandum of Law in Support of Motion to Dismiss at 7. Plaintiff argues that the 300 day time limit did not begin to run until September 17, 1990, when Conrail hired Tom Concannon, so that his charge was filed well within the statutory limit.

■■■ "As a general rule, 'the limitations period in an employment discrimination case begins to run on the date upon which the employee first learns or should have learned of the adverse employment action.'" *Allen v. Diebold, Inc.*, 807 F.Supp. 1308, 1312 (N.D.Ohio 1992) (citations omitted). However, it is foreseeable that an ADEA plaintiff might not discern or "learn of" the discriminatory nature of an adverse employment action until months after that action, if that is when he perceives he was replaced by a younger employee. In such cases, the time bar may be tolled on equitable grounds, "if the employee could show that it would be impossible for a reasonably prudent person to learn that his discharge was discriminatory." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1050 (4th Cir.1987) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.1985)). Ordinarily, equitable tolling is not appropriate unless the plaintiff can prove facts showing either that the defendant actively misled him during the six month gap in order to forestall a discrimination suit until after the statute of limitations ran, or that he was otherwise prevented "in some extraordinary way" from asserting his rights. *See Nogar v. Henry F. Teichmann, Inc.*, 640 F.Supp. 365 (W.D.Pa.1985), *aff'd* 800 F.2d 1137 (1986).

Plaintiff has not adduced facts showing that Conrail delayed in hiring Concannon for the purpose of inducing Baker to forego his rights under the ADEA. Indeed, such an allegation would be difficult to prove, since "plaintiff's knowledge of the employment of the younger man came to him through the defendants themselves," *English*, 828 F.2d at 1051, for Baker was consulting for Conrail when it hired Concannon, and even trained the younger man in the role of audiovisual specialist. Further, Conrail hired Concannon only 200 days after Baker's alleged constructive discharge, leaving plaintiff more than three months to file a timely charge with the EEOC. Yet, plaintiff waited another nine months to file a charge despite not being prevented in any "extraordinary" way from asserting his rights. *See id.* ("[I]f [the younger replacement's] employment had the critical significance [plaintiff] attributes to it, we are unable to understand why he waited nearly six months more before filing a charge"); *Barnes v. Hillhaven Rehab. & Convalescent Center*, 686 F.Supp. 311, 314 (N.D.Ga.1988) (refusing to toll ADEA statute of limitations where plaintiff did not show that defendant delayed hiring alleged replacement to forestall plaintiff's filing yet still waited six months after discovering the younger replacement to file a charge).

Finally, the gist of plaintiff's claim is that he was induced to take early retirement by defendant's representations that funding for his position was being withdrawn, which representations plaintiff insists were fraudulent because Conrail knew all along that it was going to reopen the Altoona video studio almost immediately under another department. By plaintiff's own theory, then, he should have been alerted to the possibility of age discrimination in late-March of 1990, when the audiovisual department was reopened under the Graphics Department and he was suddenly, as it were, on the outside looking in. In that case, the June 20, 1991 charge he filed with the PHRA would still have been untimely. In short, plaintiff has not shown that he was either deceived or otherwise prevented through extraordinary circumstances from filing a discrimination charge within the statutorily required 300 day time limit.

## 2. *Unlawful Discrimination*

■ The ADEA proscribes employers from failing to hire, discharging, or "otherwise discriminat[ing] against any individual ... because of such individual's age," 29 U.S.C. § 623(a)(1), so long as he or she is within the statutorily protected class of individuals who are at least 40 years of age. 29 U.S.C. § 631(a). To prevail in a disparate treatment action, an ADEA plaintiff must prove "by a preponderance of the evidence that age was a determinative factor in the employer's decision." *Billet v. Cigna Corp.,* 940 F.2d 812, 816 (3d Cir.1991) (citation omitted). This ultimate burden of proving intentional age discrimination remains with the plaintiff at all times. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395 (3d Cir.1984).

■■ Under the familiar burden-shifting rules of proof established by courts "to ease the evidentiary burdens on employment discrimination plaintiffs," *Thornbrough v. Columbus and Greenville R. Co.,* 760 F.2d 633, 638 (5th Cir.1985), plaintiff must make out a "prima facie case" by showing that he (1) is a member of the protected class, (2) was discharged from a job (3) for which he was qualified, and (4) was replaced by or treated less favorably than another employee "sufficiently younger to permit an inference of age discrimination." *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992). Once established, the plaintiff's prima facie case raises an inference of intentional discrimination by the defendant. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). However, if the plaintiff fails "to limn a prima facie case, the inference of discrimination never arises, and the employer's motion for summary judgment will be granted." *Dodge v. Susquehanna Univ.,* 785 F.Supp. 502, 505 (M.D.Pa.1992) (quoting *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 824 (1st Cir.1991)).

■ If the plaintiff establishes a prima facie case of age discrimination, the defendant then has the burden of producing evidence tending to prove that its action was motivated by some "legitimate, nondiscrimi-natory reason." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. If the defendant can articulate a nondiscriminatory reason, the presumption raised by the prima facie case drops out, and the plaintiff must prove, "by competent evidence," *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 523 (3d Cir.1992), that the employer's proffered reason was a pretext for unlawful discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993). Instantly, plaintiff has failed to limn a prima facie case, for the record contains no evidence that he was "discharged" from his position in the Altoona video studio, and if he was not discharged, then he could not possibly have been illegally "replaced" by a younger worker.

■ Because plaintiff voluntarily retired from Conrail, the only sense in which he could possibly have been "discharged" by defendant was constructively. The objective test used by courts in this circuit for determining whether employees have been constructively discharged is whether "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 887–88 (3d Cir.1984). Thus, courts considering constructive discharge allegations search the record for indicia of subtle coercion, such as threats of discharge, suggestions to the employee that he resign or retire, demotions or reductions in pay or benefits, alterations in job responsibilities, unfavorable performance evaluations, and false accusations of stealing or misconduct. *See Clowes v. Allegheny Valley Hospital,* 991 F.2d 1159, 1161 (3d Cir.1993); *Gray v. York Newspapers, Inc.,* 957 F.2d at 1082–83; *Levendos v. Stern Entertainment, Inc.,* 860 F.2d 1227, 1231 (3d Cir.1988). As the court in *Henn v. National Geographic Society,* 819 F.2d 824, 828 (7th Cir.1987) stressed, voluntariness is what distinguishes discharge from early retirement. In order to be made voluntarily, a decision must be informed, free from fraud or other misconduct, and made after due consideration. *Id.* at 828–29.

Instantly, plaintiff cannot rely on any of the aforementioned factors to support his contention that he was constructively discharged. Instead, plaintiff alleges that he relied on materially false information regarding the Altoona video studio's future communicated to him by defendant during the critical decision-making period, and argues that by making such misrepresentations to Baker, Conrail violated the ADEA. It is worth noting that plaintiff cites no case holding that employers who mistakenly or even intentionally misrepresent material facts to employees considering early retirement are liable under the ADEA when an employee relies on the misrepresentation and retires. That is not to say that ADEA liability would not obtain in such a situation, for the United States Court of Appeals for the Third Circuit has said that it "might." However, such conduct on the part of the employer would clearly *not* prove that the employee was involuntarily forced into early retirement, i.e., discharged. *E.E.O.C. v. Westinghouse Elec. Corp.*, 907 F.2d 1354, 1363 (3d Cir.1990).

To the extent that a material misrepresentation "might" constitute an ADEA violation, plaintiff's claim begins to look more like an action for common law fraud, *see Gore v. Pee Dee Farm Credit Service*, 1992 WL 373129 at *6 (D.S.C.1992), and he would presumably have to adduce facts showing that defendant's misrepresentation was intentional, and that he, the plaintiff, relied on it to his detriment. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 296 (3d Cir.1991) (elements of fraud under Pennsylvania law). The discharge element of Baker's prima facie case claim fails at this point because he has not raised any factual issue regarding fraudulent intent in connection with Conrail's alleged January 1990 misrepresentations about the Altoona video studio's future.

It is undisputed that plaintiff was first informed in mid-January of 1990, probably January 16, 1990, that the audiovisual studio had been budgeted for only the first three months of 1990. Baker Deposition at 23, 25; Sweetland Deposition at 19. At no time did any Conrail employee suggest that plaintiff take early retirement or even point out the uncertainty surrounding his employment with Conrail in light of the forthcoming budget cuts. Baker Deposition at 31. The record further shows that as of January 26, 1990, Conrail was still undecided about the future of the Altoona video studio. On that date, F.H. Nichols sent a memorandum to Richard Sullivan proposing three alternatives to the earlier-discussed idea that the studio be closed, one of which was to operate the studio under the "proposed new corporate graphics group now being formed." Exhibit B to Brief in Opposition to Defendant's Motion for Summary Judgment. Ten days later, and over two weeks after Baker submitted his application for early retirement, the studio's fate had still not been resolved, for on February 5, 1990, David Sweetland informed plaintiff that the "future of the studio looked very grim, and that the only bright spot might be some other department wanting to take over the studio." Sweetland Deposition at 23–26. In fact, Conrail did close the Altoona video studio, only to reopen it approximately one month later under the oversight of another department. Pretrial Stipulation at ¶¶ 13, 14.

In light of these uncontested facts viewed in a light most favorable to the plaintiff, it is simply impossible that a factfinder could conclude that Conrail misrepresented, let alone intentionally and fraudulently misrepresented to Baker its future plans for the video studio at or prior to the time he opted for early retirement. Plaintiff insists that Conrail did know, but neglected to inform him, that the video studio would continue to be operated under another department beyond March of 1990. However, plaintiff has adduced no facts supporting this suspicion, and the record suggests otherwise.

The testimony of Richard Sullivan shows that as of January 26, 1990, six days after plaintiff applied for early retirement, the proposed new corporate graphics group was an idea that would probably (not certainly) be pursued, and that his suggestion that the video studio be operated under the new group would have to be approved by others before being implemented. Sullivan Deposition at 33–34. Even assuming that the decision to place the video studio under the control of the new graphics department had

been finalized by January 20, 1990, plaintiff has adduced no evidence showing that David Sweetland or Horace Bothum, the two supervisors with whom he spoke during January 1990, knew of that decision. Therefore, plaintiff cannot prove that the Conrail employees who communicated to him the information on which he based his decision to retire made their statements knowing they were false. *See Berda v. CBS, Inc.,* 800 F.Supp. 1272, 1277 (W.D.Pa.1992), *aff'd,* 975 F.2d 1548 (3d Cir.1992).

Everything that Conrail told Baker during January 1990 was true: funding for the Altoona video studio was drastically cut; the studio was closed in late-March 1990 after its three month budget was exhausted; when it reopened, the studio was operated under the oversight of a different department, consistent with discussions held between Conrail decisionmakers in late-January and sometime in February 1990.

 Plaintiff's allegation that these events were orchestrated by defendant as a subterfuge for discriminating against him on the basis of his age is simply speculation unsupported by a shred of evidence. But an employee's subjective "perceptions cannot govern a claim of constructive discharge." *See Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476 (1st Cir.1993); *Lasley v. Veterans Administration,* 789 F.Supp. 1468, 1475–76 (E.D.Mo.1992). More importantly, to avoid summary judgment, the non-movant must create a genuine issue of material fact by adducing more than a "scintilla" of evidence, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), not merely spin an interesting theory of liability.

For the foregoing reasons, defendant's motion for summary judgment will be granted and plaintiff's complaint dismissed with prejudice. An appropriate order follows.

### ORDER

AND NOW, this 20th day of October, 1993, for the reasons explained in the foregoing opinion, defendant Consolidated Rail Corporation's Motion for Summary Judgment (Docket No. 10) is hereby granted and plaintiff Charles Baker's Complaint is accordingly dismissed with prejudice. The Clerk shall mark this case closed.