**Mario SORGINI, Plaintiff,**

**v.**

**WISSAHICKON SCHOOL DISTRICT, Defendant.**

**CIVIL ACTION NO. 16–1837**

United States District Court, E.D. Pennsylvania.

Signed 04/05/2017

grant of coverage, it is unnecessary to evaluate these other provisions.

Reginald C. Allen, Philadelphia, PA, for Plaintiff.

Craig D. Ginsburg, Michael I. Levin, Richard Bruce Galtman, Levin Legal Group PC, Huntingdon Valley, PA, for Defendant.

## MEMORANDUM

Tucker, C.J.

Presently before the Court are Plaintiff's Complaint (Doc. 1), Defendant's Motion to Dismiss (Doc. 6), Plaintiff's Response to the Motion to Dismiss (Doc. 9), Defendant's Reply to the Response (Doc. 12), Plaintiff's Amended Complaint (Doc. 14), and Defendant's Amended Motion to Dismiss (Doc. 15). Upon consideration of the parties' motions and for the reasons set forth below, Defendant's Motion to Dismiss is DENIED.

## I. FACTUAL BACKGROUND

Plaintiff Mario Sorgini ("Plaintiff") alleges that his employer, Defendant Wissahickon School District ("Defendant"), violated the Age Discrimination in Employment

Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act of 1955 ("PHRA"), 43 P.S. §§ 951–963 (2009 CUM. SUPP. 2016). Plaintiff alleges that Defendant constructively discharged him because of his age and disabilities, and subsequently replaced him with a younger employee.

In 2007, Plaintiff was hired as a building supervisor for Defendant's Stoney Creek Elementary School. Am. Compl. ¶ 8. Plaintiff was fifty-one years old at the time. *Id.* ¶ 5. Since 2007, Plaintiff suffered several physical impairments including heart and knee problems that affected his ability to walk or stand without pain for extended periods of time. *Id.* ¶ 7. These impairments culminated in Plaintiff suffering a heart attack and undergoing two knee surgeries. *Id.* ¶¶ 14–15. Plaintiff also suffered from diverticulitis. *Id.* ¶ 18. In addition, Plaintiff fell through a sky light while working at the school in July 2013, which led to chronic pain. *Id.* ¶ 17. While employed by Defendant, Plaintiff took a "significant" amount of time off for his surgeries, injury, and illness. *Id.* ¶¶ 15–18. In October or November 2013, Maureen[1], a night custodian at the Elementary School, informed Plaintiff that she overheard Mr. Abbamont, the school principal, and Mr. Saurman, Plaintiff's supervisor, discussing the need to terminate Plaintiff due to his illness and numerous sick leaves. *Id.* ¶ 19.

On January 9, 2014, Mr. Abbamont met with Plaintiff and expressed concern that Maureen allowed her boyfriend on school premises without authorization. *Id.* ¶ 24. Plaintiff informed Mr. Abbamont that he

had no knowledge of this activity. *Id.* Prior to this meeting, Plaintiff's employment performance had never been questioned and he had no disciplinary history. *Id.* ¶ 12.

On January 10, 2014, School District officials including Ms. Rossi, the Human Resources ("HR") director, Mr. Wade Coleman, the Chief Financial Officer, and Mr. Saurman, Plaintiff's supervisor, met with Plaintiff. *Id.* ¶¶ 29, 32. Ms. Rossi informed Plaintiff that if he did not resign immediately, he would be terminated for allowing Maureen's boyfriend on school premises. *Id.* ¶ 39. It is alleged that Ms. Rossi also told Plaintiff that he would not be eligible for disability pension benefits if he were terminated. *Id.* ¶ 61. Plaintiff claims that he signed a resignation letter during the meeting under the threat of immediate termination. *Id.* ¶ 43; Am. Mot. to Dismiss at 8. Plaintiff was not represented at the meeting, and claims that he was not informed of his right to contest termination. Am. Compl. ¶ 43. Plaintiff was fifty-eight years old when he resigned, and was subsequently replaced by an individual who was younger than forty.[2] *Id.* ¶¶ 5, 68.

Plaintiff alleges that Defendant had a "liberal practice" of allowing individuals who were not school employees on school premises. *Id.* ¶ 54. For example, Plaintiff witnessed Mr. Abbamont allowing Maureen's boyfriend on campus. *Id.* ¶ 55. Plaintiff also witnessed other employees allowing individuals who were not school employees on school premises. Am. Compl. *Id.* These employees included two custodians, a secretary, and a teacher. *Id.* Neither the employees nor Mr. Abbamont were disciplined for their actions. *Id.* Un-

---

1. Defendant's employees are named throughout this Memorandum Opinion as they are as presented in the record.

2. Plaintiff does not provide further details about his replacement. In the Amended Com-

plaint, Plaintiff alleges "Defendant hired a person under the age of forty to replace [P]laintiff, on its belief that his replacement would not have serious health issues like [P]laintiff, which it believed were age related." Am. Compl. ¶ 68

like Plaintiff, these employees were not disabled and were either under the age of forty or younger than Plaintiff. *Id.* ¶ 67.[3]

## II. PROCEDURAL HISTORY

Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). *Id.* ¶ 4. In a hearing before the Pennsylvania Unemployment Compensation Board concerning whether Plaintiff was eligible for unemployment compensation benefits, the Referee ruled that Plaintiff did not voluntarily resign. *Id.* ¶ 60. Finally, Plaintiff received a Right to Sue Letter from the EEOC and subsequently filed his Complaint in this Court on April 19, 2016. *Id.*

## III. STANDARD OF REVIEW

A court may dismiss a plaintiff's complaint under Rule 12(b)(6) when it does not " 'state a claim to relief that is plausible on its face.' " *Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 268 (3d Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In light of the Supreme Court's rulings in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the district court conducts a three-part analysis in evaluating a motion to dismiss for failure to state a claim. *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016).

■ First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' " *Id.* (quoting *Iqbal,* 556 U.S. at 675, 129 S.Ct. 1937). Second, the

court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' " *Id.* (quoting *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937). Accordingly, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009). Lastly, after accepting the well-pleaded factual allegations and " 'assum[ing] their veracity ... [the court must] determine whether they plausibly give rise to an entitlement to relief.' " *Connelly,* 809 F.3d at 787 (quoting *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. *Santiago v. Warminster Twp.,* 629 F.3d 121, 128 (3d Cir. 2010). A plaintiff may survive a motion to dismiss if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

■ In *Fowler v. UPMC Shadyside,* the Third Circuit held that the heightened standard of plausibility set forth by *Iqbal* and *Twombly* applies to pleadings in an employment discrimination context. 578 F.3d at 213. However, this heightened standard does not require a plaintiff to establish the prima facie case for discrimination in order to survive a motion to dismiss. *Id.* ("Even post-*Twombly,* it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case....."). Rather, to survive a motion to dismiss in an employment discrimination context, a plaintiff must present factual allegations that would " 'raise a reasonable

3. In the Amended Complaint, Plaintiff did not include the date on which he filed the charge of discrimination with the EEOC, the date of the Benefits hearing before the Pennsylvania

Unemployment Compensation Board, or the date he received the Right to Sue letter from the EEOC.

expectation that discovery will reveal evidence of the necessary element[s]' " of the prima facie case. *Id.* at 213 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

## IV. DISCUSSION

 Plaintiff alleges that Defendant a) constructively discharged him on the basis of his age in violation of the ADEA and PHRA, and b) constructively discharged him on the basis of his disability in violation of the ADA and PHRA. A plaintiff may demonstrate that his employer engaged in "[d]isparate treatment discrimination ... by either using direct evidence of intent to discriminate or using indirect evidence from which a court could infer intent to discriminate." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008). The court will consider evidence as "direct" when the evidence is " 'so revealing of [discriminatory] animus that it is unnecessary to rely on the [*McDonnell Douglas*] burden-shifting framework, under which the burden of proof remains with the plaintiff.' " *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (quoting *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 512 (3d Cir. 1997)).

In the present case, Plaintiff claims that his co-worker overheard the school principal and Plaintiff's supervisor discussing the need to terminate Plaintiff due to his illness and sick leaves. Am. Compl. ¶ 19. Plaintiff also cites the fact that he was replaced by an individual under the age of forty as evidence of intent to discriminate. This evidence is not "strong enough 'to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision[,]' " and therefore is indirect evidence of discrimination. *Anderson*, 621 F.3d at 269 (quoting *Walden*, 126 F.3d at 513 (internal quotation marks omitted)).

The Court will use the *McDonnell Douglas* burden-shifting framework to determine whether Plaintiff's claims of disparate treatment pursuant to the ADEA, ADA, and PHRA should survive the motion to dismiss, because Plaintiff's claims are supported by indirect evidence. *See Mindock v. Weir Minerals N. Am.*, 501 Fed.Appx. 200, 202 (3d Cir. 2012) (citing *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009)); *see also Magerr v. City of Philadelphia*, No. 15-CV-4264, 2016 WL 1404156, at *4–5 (E.D. Pa. Apr. 11, 2016).

 Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.... If a plaintiff establishes a prima facie case of discrimination, then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. ...If the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination.

*Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Though the burden of production shifts between the parties, "the ... plaintiff at all times bears the ultimate burden of persuasion." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (internal quotation marks omitted). Accordingly, the Court will determine whether Plaintiff satisfied this burden to preclude the Court from granting the motion to dismiss.

### a. Age Discrimination Claim Pursuant to the ADEA

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

■ A claim of discrimination pursuant to the ADEA will survive a Rule 12(b)(6) motion to dismiss if the plaintiff "... make[s] factual allegations that, if true, would either (1) establish his prima facie case [...] or (2) show that age was the 'but-for' cause of the challenged adverse employment action." *Johnson v. Delaware County Juvenile Detention Center*, No. 11-CV-1166, 2012 WL 895507, at *7 (E.D. Pa. Mar. 6, 2012). Thus if a plaintiff can allege the prima facie case required by the first step of *McDonnell Douglas*, the plaintiff will survive a motion to dismiss and no further inquiry under *McDonnell Douglas* is required at this stage. *Mindock*, 501 Fed.Appx. at 202. Accordingly, Plaintiff must first demonstrate that he satisfies the prima facie case for the ADEA.

■ To establish the prima facie case under the ADEA, the plaintiff must show: "(1) he is older than 40; (2) he applied for and was qualified for the position; (3) he suffered an adverse [employment] action; and (4) he was replaced by a sufficiently younger person to support the inference of age discrimination." *Kargbo v. Philadelphia Corp. for Aging*, 16 F.Supp.3d 512, 521–22 (E.D. Pa. 2014). Plaintiff must make factual allegations that, if true, would meet the prima facie case for age discrimination.

It is clear that Plaintiff satisfies the first prong of the prima facie case because his employment relationship with Defendant ended when Plaintiff was fifty-eight years old. Am. Compl. ¶¶ 5. Additionally, Defendant concedes that Plaintiff satisfies the second prong of the prima facie case. Am. Mot. to Dismiss at 8. Therefore, the issues are whether Plaintiff can satisfy the third and fourth prongs of the prima facie case. Accordingly the Court will determine whether Plaintiff presents factual allegations that would "'raise a reasonable expectation that discovery [would] reveal evidence [that]'" Plaintiff suffered an adverse employment action and was subsequently replaced by a sufficiently younger person. *Fowler*, 578 F.3d at 213 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

■ In regards to the third prong, Plaintiff alleges that he suffered an adverse employment action despite the fact that he voluntarily resigned. A plaintiff who voluntarily resigns may, nonetheless, have suffered an adverse employment action if he was constructively discharged by the defendant. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502–03 (3d Cir. 2010); *see also Embrico v. U.S. Steel Corp.*, 245 Fed.Appx. 184, 187 (3d Cir. 2007); *see also Baker v. Consol. Rail Corp.*, 835 F.Supp. 846, 852 (W.D. Pa. 1993), aff'd, 30 F.3d 1484 (3d Cir. 1994).

■ An employee is constructively discharged when "a reasonable person in the employee's position would have felt compelled to resign-that is, whether he would have had no choice but to resign." *Embrico*, 245 Fed.Appx. at 187 (citing *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)). When considering whether a plaintiff was constructively discharged, the court will "search the record for indicia of subtle coercion, such as threats of discharge, suggestions to the employee that he resign or retire, demotions or reductions in pay or benefits, alterations in job responsibilities, unfavorable performance evaluations, and false accusations of stealing or misconduct."

*Baker*, 835 F.Supp. at 852. A voluntary decision to resign must be "informed, free from fraud or misconduct, and made after due deliberation." *Embrico*, 245 Fed.Appx. at 187 (*citing Baker*, 835 F.Supp. at 852.).

Plaintiff alleges he was constructively discharged because he was subject to false accusations of misconduct and threats of discharge. Plaintiff claims that on January 9 and 10, 2014, he was falsely accused of letting unauthorized personnel on school premises. Am. Compl. ¶¶ 24, 39. These accusations culminated in a meeting between Plaintiff and school district administrators, during which Plaintiff was told that he would be terminated for his misconduct if he did not resign during the meeting. Am. Compl. ¶ 39. Given these time constraints, Plaintiff clearly did not have the opportunity for due deliberation before making the decision to sign his resignation letter. Am. Compl. ¶ 43; Am. Mot. to Dismiss at 8. Arguably, Plaintiff's decision to resign was not "informed" because he was not represented at the meeting. Am. Compl. ¶ 43.

In the Amended Complaint, Plaintiff presented factual allegations that would "'raise a reasonable expectation that discovery will reveal evidence'" that he was constructively discharged, and therefore suffered an adverse employment action. *Fowler*, 578 F.3d at 213 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). The Court therefore concludes that Plaintiff satisfies the third prong of the prima facie case.

 To satisfy the fourth prong of the prima facie case, Plaintiff alleges that an individual under the age of 40 replaced him. Am. Compl. ¶ 68. This allegation "'raise[s] a reasonable expectation that discovery will reveal evidence'" that a sufficiently younger individual replaced Plaintiff; therefore Plaintiff satisfies the fourth prong of the prima facie case. *Id.*

Plaintiff met his burden to overcome the first step of the *McDonnell Douglas* framework by satisfying the elements of the prima facie case for age discrimination under the ADEA. Thus, Plaintiff's claim of age discrimination survives the motion to dismiss.

**b. Disability Discrimination Claim Pursuant to the ADA**

 The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees, ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, a "qualified individual" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A person has a "disability" if he "[has] a physical or mental impairment that substantially limits one or more of [his] major life activities ..." 42 U.S.C. § 12102(2). At the pleading stage, a plaintiff's mere allegation of disability qualifies him for protection under the ADA. *Fowler*, 578 F.3d at 214.

 Plaintiff qualifies for protection under the ADA. In the Amended Complaint, Plaintiff alleged several musculoskeletal and cardiovascular physical impairments that limit major life activities, including heart and knee problems that affected his prolonged ability to walk or stand without pain. Am. Compl. ¶ 7. Because Plaintiff qualifies for protection, the Court will determine whether Plaintiff's claim survives the motion to dismiss by analyzing whether Plaintiff satisfies the prima facie case for disability discrimination under the ADA.[4] *See Fortes v. Boyer-*

4. In the Amended Motion to Dismiss, Defen-

dant does not contest that Plaintiff satisfies

*town Area Sch. Dist.*, No. 12-CV-6063, 2014 WL 3573104, at *10 (E.D. Pa. July 18, 2014).

■ To establish the prima facie case under the ADA, the plaintiff must show "1) [he] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the School District; and 2) [he] has suffered an otherwise adverse employment decision as a result of discrimination based on [his] disability." *Id.* (citing *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

In regards to the first prong, an individual may be qualified to perform the essential functions of a job based on relevant job experience. *See, e.g. id.* at *8 (finding that the plaintiff was qualified to be an English teacher based, in part, on her years of teaching experience). Plaintiff has seven years of experience as a building supervisor; thus, he satisfies the first prong of the prima facie case. Am. Compl. ¶ 8, 39.

To satisfy the second prong of the prima facie case, Plaintiff must allege that he suffered a discriminatory adverse employment decision due to his disabilities. Constructive discharge as a result of a plaintiff's disability will satisfy the second prong's adverse employment decision requirement. *Embrico*, 245 Fed.Appx. at 187. To determine whether an employee was constructively discharged, the court will consider whether "the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Colwell*, 602 F.3d at 502 (3d Cir. 2010) (quoting*Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)). If an employer " 'threatened [the employee] with discharge' or 'urge[d] or suggest[ed] that [he] resign or retire

the definition of a disabled or qualified individual under the ADA, but also does not con-

...' " it is relevant to the court's consideration of whether the employee was constructively discharged. *Id.* at 503.

Plaintiff satisfies the second prong of the prima facie case because he presents factual allegations in the Amended Complaint that would " 'raise a reasonable expectation that discovery will reveal evidence' " that he was constructively discharged as a result of his disabilities. *Fowler*, 578 F.3d at 213 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). Defendants told Plaintiff that he needed to resign or would be terminated because he allowed non-school personnel on campus; however, non-disabled employees were not disciplined for similar actions. Am. Compl. ¶¶ 58, 55. Furthermore, Plaintiff alleges that his coworker overheard Defendant's administrators discussing the need to terminate Plaintiff due to his illness and sick leaves. *Id.* ¶ 19. These allegations raise the reasonable expectation that Plaintiff suffered a discriminatory adverse employment action due to his disabilities; therefore Plaintiff satisfies the second prong of the prima facie case. See *Fowler*, 578 F.3d at 214.

Plaintiff met his burden to overcome the first step of the *McDonnell Douglas* framework by satisfying the elements of the prima facie case for disability discrimination under the ADA. Thus, Plaintiff's claim of disability discrimination survives the motion to dismiss.

### c. Age and Disability Discrimination Claims Pursuant to the PHRA

■ The PHRA provides that employers shall not discriminate on the basis of "race, color, religious creed, ancestry, age, sex, national origin or non-job related

cede that Plaintiff satisfies either definition.

300

handicap or disability." 43 P.S. § 955(a). The PHRA "is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (quoting *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265 n. 5 (3d Cir. 2006)).

The PHRA's language does not specify that it is to be interpreted differently than the ADEA and ADA. Thus, the Court's analysis of Plaintiff's claims pursuant to the ADEA and ADA also applies to Plaintiff's claims pursuant to the PHRA. Accordingly, like Plaintiff's claims pursuant to the ADEA and ADA, Plaintiff's claims pursuant to the PHRA survive the motion to dismiss.

## V. CONCLUSION

For the reasons explained herein, Defendant's Motion to Dismiss is denied. An appropriate Order follows.