J-S24016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| DELTHEIA JARMON | IN THE SUPERIOR COURT |
| | OF PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| THE CONVENT OF THE SISTERS OF ST JOSEPH VILLA D/B/A ST. JOSEPH VILLA | |
| | |
| Appellee | No. 3301 EDA 2019 |

Appeal from the Order Entered October 8, 2019
In the Court of Common Pleas of Montgomery County
Civil Division at No.: No. 2017-18288

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 11, 2020**

Appellant Deltheia Jarmon appeals from the October 8, 2019 order of the Court of Common Pleas of Montgomery County ("trial court"), which granted the motion for summary judgment of Appellee, The Convent of the Sisters of St. Joseph Villa d/b/a St. Joseph Villa, and dismissed Appellant's disability discrimination claim under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*.  Upon review, we affirm.

The facts and procedural history of this case are undisputed.[1]  On February 6, 2009, Appellee hired Appellant as a part-time certified nursing assistant

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Unless otherwise specified, these facts come from the trial court's January 3, 2020 opinion.  **See** Trial Court Opinion, 1/3/20, at 1-5.

("CNA"). The physical demands of the CNA job position included, but were not limited to the following:

- Heavy to moderate physical effort

  o Lift/carry up to 50 lbs

- Balance of sedentary/mobility work

  o Frequent kneeling/stooping/crouching/reaching/bending

  o Frequently moves/lifts/ supplies or equipment

  o Frequently transfers and repositions residents

At all times relevant hereto, these physical demands remained unchanged, and Appellant was aware of these requirements for her job. Appellee also employed individuals as medication technicians: a hybrid position that requires the employee to perform all of the tasks of a CNA with the added responsibility of distributing medications under the guidance of a nurse.

During Appellant's employment with Appellee, Appellant was given an employee handbook, which she acknowledged receiving and understanding. In the handbook, the Family Medical Leave Act ("FMLA") policy provided that:

> An eligible employee can request and receive up to 12 work weeks of unpaid leave (either taken in blocks of time or intermittently) during any rolling 12 -month period, measured backward from when the FML is sought to be taken, for one or more of the following reasons . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

- 2 -

Reproduced Record (R.R.) at 93a. Appellee's employment handbook also set forth its leave of absence policy ("LOA policy") which was in effect during Appellant's employment. The LOA policy provides in pertinent part:

> A Leave of Absence is unpaid and can last for up to 3 months. If necessary, after three months' time, the employee may request an extension, for up to an additional three months. Any combination of Family and Medical Leave and Leave of Absence may not exceed 6 months unless authorized by Administration.
>
> At the conclusion of the leave period, an employee who has been absent due to illness or disability must submit a physician's certification that he/she can return to work, full duty.
>
> Efforts will be made to maintain the employee's position, when possible. Due to [St. Joseph Villa's] needs and available personnel there can be no guarantee that the same position will be available upon return to work.

*Id.* at 94a. On May 8, 2014, Appellant was absent from work and subsequently submitted a doctor's note from Drexel University College of Medicine that stated that Appellant needed to be excused from work until May 31, 2014. On May 9, 2014, the Human Resources ("HR") Department of Appellee provided Appellant with the appropriate FMLA forms to apply for FMLA qualifying leave of absence. On May 15, 2014, Appellant provided Appellee with the FMLA Certification of Healthcare Provider signed by Appellant's healthcare provider. This form certified that Appellant was unable to perform any job function due to her health condition and would not return to work until May 31, 2014.

On May 31, 2014, Appellant did not return to work as estimated by her doctor. Appellee received a doctor's note from Appellant on June 16, 2014,

stating that Appellant still was incapacitated until July 31, 2014. Appellee extended Appellant's leave to the maximum allowable under the FMLA at twelve weeks or until approximately July 31, 2014. On July 31, 2014, the end of Appellant's FMLA leave, Appellant did not return to work. On August 12, 2014, Appellee's HR Department contacted Appellant and informed her that in light of the expiration of her FMLA leave, Appellant could apply for a personal leave of absence to extend her leave of absence by the maximum allowable extension, an additional three months. That same day, Appellee provided Appellant with an LOA request form; this form was signed by Appellant and returned to Appellee on August 14, 2014. The LOA form provided in relevant part:

> Due to [St. Joseph Villa's] needs and available personnel there can be no guarantee that the same position, or any position, will be available when I am able to return to work.
>
> I also realize that failure to report to Human Resource and/or my Department Head prior to, or on my schedule date of return will result in immediate termination of my employment at Saint Joseph Villa.

R.R. at 115a. On October 27, 2014, Appellee's HR Department contacted Appellant to inform her that Appellant's maximum leave of absence of six months was due to expire in the coming week. Appellant was not able to return to work and did not provide Appellee with an estimated return to work date. Furthermore, Appellant failed to provide Appellee with any medical documentation that cleared her to return to work in any capacity. On March 31, 2015, more than ten months after Appellant ceased to come to work and

five months after Appellant's personal leave of absence expired, Appellant was removed from Appellee's active employee list.

On July 14, 2017, Appellant initiated the instant civil action against Appellee. On October 3, 2017, Appellant filed the "Second Amended Complaint," asserting a single claim for disability discrimination under the PHRA. On October 20, 2017, Appellee filed an answer and new matter. Following the close of discovery, on June 24, 2019, Appellee moved for summary judgment, alleging, *inter alia*, that Appellant could not establish a *prima facie* case for disability discrimination under the PHRA. Appellant responded, objecting to Appellee's motion for summary judgment. Following a hearing, the trial court granted Appellee's motion for summary judgment. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents five issues for our review:

[I.] Whether the trial court erred in granting summary judgment against [Appellant].

[II.] Whether the trial court erred that there is no material issue of fact as to whether Appellee violated the [PHRA] by failing to provide [Appellant] an extended leave as a reasonable accommodation for her disability.

[III.] Whether the trial court erred [in] finding that there was no disputed material issue of fact that [Appellee's] termination of [Appellant's] employment violated the [PHRA].

[IV.] Whether the trial court erred [in] finding that [Appellant] failed to establish a *prima facie* claim of disability discrimination under the [PHRA].

[V.] Whether the trial court erred in finding as a matter of law that [Appellee's] termination of [Appellant's] employment was based upon a legitimate non-discriminatory business reason.

Appellant's Brief at 5-6 (unnecessary capitalization omitted). Although Appellant raises five issues, they can be distilled to three.[2] First, combining her first, third and fourth issues, we address whether the trial court erred in concluding that she failed to establish a *prima facie* claim for disability discrimination under the PHRA. Second, we address Appellant's claim that the trial court erred in failing to conclude that Appellee denied her reasonable accommodation. Third, and offered in the alternative, we address the Appellant's argument that the trial court erred in concluding that Appellee had a legitimate non-discriminatory reason for terminating her employment.

We review a challenge to the entry of summary judgment as follows:

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P. No. 1035.2. The rule [provides] that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. **Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law**. Lastly, we will review the record in the light most favorable

_____

[2] Indeed, in the argument section of her brief, Appellant seemingly focuses only on the three issues that we have identified herein.

> to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

**E.R. Linde Const. Corp. v. Goodwin**, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted; brackets in original) (emphasis added).

After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's claims. **See** Trial Court Opinion, 1/3/20, at 6-14. Viewing the record in the light most favorable to Appellant, as the nonmoving party, and resolving all doubts as to the existence of a genuine issue of material fact against Appellee, as the moving party, we conclude that the trial court did not err in granting Appellee's motion for summary judgment.

With respect to the issue of whether Appellant established a *prima facie* case for disability discrimination, we are constrained to agree with the trial court's conclusion. She failed to set forth a disability discrimination claim.

In the absence of direct evidence, a claim of disability discrimination under the PHRA may be analyzed under the three-part, burden-shifting framework first set forth in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973),[3] **Canal Side Care Manor, LLC v. Pa. Human Relations**

_____

[3] "It is now axiomatic that the familiar analytical framework first pronounced in **McDonnell Douglas** . . . for resolution of suits brought under Title VII [of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17] also guides an analysis of claims brought under the [Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213]." **Olson v. Gen. Elec. Astrospace**, 101 F.3d 947, 951 (3d Cir. 1996). "[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA."

***Comm'n***, 30 A.3d 568, 570, 573 (Pa. Cmwlth. 2011).[4]  Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence.  ***Id.*** at 573 n.7 (citing ***McDonnell Douglas***). Once a *prima facie* case is presented, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the adverse employment action.  ***Id.***  If the employer does so, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the articulated reason was merely pretext for discrimination.  ***Id.***  However, "[t]hough the burden of production shifts between the parties, 'the . . . plaintiff at all times bears the ultimate burden of persuasion.'"  ***Sorgini v. Wissahickon Sch. Dist.***, 274 F. Supp. 3d 291, 296 (E.D. Pa. 2017) (quoting ***St. Mary's Honor Ctr. v. Hicks***, 509 U.S. 502, 511, (1993) (internal quotation marks omitted)).

A plaintiff establishes a *prima facie* case of disability discrimination under the PHRA by demonstrating: "(1) that he or she is a disabled person

---

***Colwell v. Rite Aid Corp.***, 602 F.3d 495, 499 n.3 (3d Cir. 2010); ***see also Imler v. Hollidaysburg Am. Legion Ambulance Serv.***, 731 A.2d 169, 173 (Pa. Super. 1999) (noting that "[t]he PHRA and ADA are interpreted in a co-extensive manner[,] ... because the PHRA and ADA deal with similar subject matter and are grounded on similar legislative goals").  Indeed, "[i]n general, we analyze PHRA claims by using the same standards as analogous federal statutes.  Further, we look to federal court decisions to inform our interpretations of the PHRA, although such decisions are not binding on our court."  ***Renna v. PPL Electric Utilities, Inc.***, 207 A.3d 355, 367 n.16 (Pa. Super. 2019) (citations omitted).

[4] "This Court is not bound by decisions of the Commonwealth Court.  However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." ***Petow v. Warehime***, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010) (citation omitted), ***appeal denied***, 12 A.3d 371 (Pa. 2010).

within the meaning of the [PHRA];(2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she has suffered an otherwise adverse employment decision as a result of discrimination." *Canteen Corp. v. Pa. Human Relations Comm'n*, 814 A.2d 805, 811 (Pa. Cmwlth. 2003). At issue here is the second element. The burden is on the plaintiff to prove that she is an otherwise qualified individual by means of a two-part test. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). A court must consider "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. pt. 1630.2(n)). "The purpose of the second step is to ensure that individuals with disabilities who can perform the essential functions of the position held or desired are not denied employment opportunities because they are not able to perform marginal functions of the position." *Lombardo v. Air Prod. & Chemicals, Inc.*, 2006 WL 1892677, at *10 (E.D. Pa filed July 7, 2006).

Instantly, we agree with the trial court's analysis. As the court explained:

> Appellant provided no evidence that she has a disability that does not substantially interfere with her ability to do the job of a CNA. It has been well settled in Pennsylvania, that in order for a plaintiff

- 9 -

to recover under the PHRA, he or she must be able to demonstrate that they are able to perform the essential job functions of the job. ***Imler***, 731 A.3d at 173. In the instant action, apart from her own testimony that she could perform the essential functions of a CNA, Appellant failed to provide Appellee with any documentation that medically cleared her to perform the physical demand requirements of the position. Appellant asserts that, even if she was unable to perform the essential job duties like transferring and repositioning residents, there were other floors within Appellee's institution that did not require her to perform tasks that required her to meet such physical demands. However, an employer is not required to modify or eliminate an essential function of a job to accommodate its disabled employee. ***Walton v. Mental Health Ass'n of Se. Pa.***, 168 F.3d 661, 671 (3d Cir. 1999). Therefore, Appellant's assertion that she is a qualified individual with a disability pursuant to the PHRA could not be accepted by the trial court.

Trial Court Opinion, 1/3/20, at 8-9 (footnote omitted). Accordingly, Appellant is not entitled to relief because she fails to establish a *prima facie* case for disability discrimination.

Next, Appellant's claim that the trial court erred in failing to conclude that Appellee denied her reasonable accommodation fails for two reasons.[5] First, because she failed to assert this claim in her complaint. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Second, assuming that she had, she "did not

---

[5] To prevail on a failure to accommodate claim, a plaintiff must prove: (1) the employer had knowledge of the employee's disability; (2) **the employee requested accommodations** or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking such accommodations or assistance; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. ***Capps v. Mondelez Glob., LLC***, 847 F.3d 144, 157 (3d Cir. 2017) (emphasis added); ***Taylor v. Phoenixville Sch. Dist.***, 184 F.3d 296, 319-20 (3d Cir. 1999).

request a reasonable accommodation," based on the record before us. Trial Court Opinion, 1/3/20, at 9. At her deposition, she explicitly admitted that she failed to request an accommodation associated with her disability. *See* N.T. Deposition (Jarmon), 2/6/19, at 47, 60. Accordingly, Appellant obtains no relief.

Finally, based upon our conclusion that Appellant failed to establish a *prima facie* case for disability discrimination, we need not address her last claim that the trial court erred in determining that Appellee had a legitimate non-discriminatory reason for terminating her employment. Even assuming Appellant's established a *prima facie* case for disability discrimination claim, she still would not be entitled to relief. As the trial court found, Appellee offered a legitimate non-discriminatory reason for terminating Appellant's employment and Appellant failed to establish that Appellee's reason was merely a pretext for discrimination. Trial Court Opinion, 1/3/20, at 11-14. The trial court noted that the evidence clearly showed that Appellant "failed to provide medical documentation stating her ability to return to work as required under Appellee's LOA policy and other applicable employment practices and procedures. Due to these reasons Appellant was removed from the active employee list." *Id.* at 11.

In sum, we conclude that the trial court did not err in granting Appellee's motion for summary judgment as a matter of law where (1) Appellant failed to establish a *prima facie* case for disability discrimination under the PHRA, (2) Appellant admitted that she did not request reasonable accommodation

- 11 -

and otherwise did not assert a claim for reasonable accommodation in her complaint; and (3), assuming Appellant established a *prima facie* case for disability discrimination, Appellee had a legitimate non-discriminatory reason for terminating her employment. Accordingly, we affirm the trial court's October 8, 2019 order. We further direct that a copy of the trial court's January 3, 2020 opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

DELTHEIA JARMON : NO. 2017-18288

V. :

THE CONVENT OF THE SISTERS OF :
ST. JOSEPH VILLA d/b/a
ST. JOSEPH VILLA :

TOLLIVER, J. **January 3, 2020**

### 1925 (a) OPINION

Plaintiff, Deltheia Jarmon ("Appellant"), appeals from the October 8, 2019 Order, granting Appellee's Motion for Summary Judgment in this employment discrimination case involving allegations of Appellee's violations of the Pennsylvania Human Relations Act ("PHRA"). For the reasons that follow, it is respectfully submitted that the trial court's October 8, 2019 Order should be affirmed.

Fairly summarized, the relevant facts of this case, as presented by Appellee in its motion for summary judgment, are as follows: On February 6, 2009, Appellant was hired by Appellee as a part-time certified nursing assistant ("CNA"). (Appellee's Motion for Summary Judgment, 6/24/19 at ¶12). The physical demands of the CNA job position included, but were not limited to:

- Heavy to moderate physical effort
  o Lift/carry up to 50 lbs.
- Balance of sedentary/mobility work
  o Frequent kneeling/stooping/crouching/reaching/bending
  o Frequently moves/lifts/supplies or equipment
  o Frequently transfers and repositions residents

*Id.* at ¶13

At all times relevant hereto, these physical demands remained unchanged, and Appellant was aware of these requirements for her job. *Id.* Appellee also employed individuals as medication technicians; a hybrid position that requires the employee to perform all of the tasks of a CNA with the added responsibility of distributing medications under the guidance of a nurse. *Id.* at ¶15.

During Appellant's employment with Appellee, Appellant was given an employee handbook, which she acknowledged receiving and understanding. *Id.* at ¶¶17-21. In the handbook, the Family and Medical Leave Act ("FMLA") policy stated that:

> An eligible employee can request and receive up to 12 work weeks of unpaid leave (either taken in blocks of time or intermittently) during any rolling 12-month period, measured backward from when the FML is sought to be taken, for one or more of the following reasons... [b]ecause of a serious health condition that make the employee unable to perform the functions of the position of such employee.

*Id.*

Appellee's employment handbook also set forth its personal leave of absence policy ("LOA policy") which was in effect during Appellant's employment and states in pertinent part:

> A Leave of Absence is unpaid and can last for up to 3 months. If necessary, after three months' time, the employee may request an extension, for up to an additional three months. Any combination of Family and Medical leave and Leave of Absence may not exceed 6 months unless authorized by Administration...

> At the conclusion of the leave period, an employee who has been absent due to illness or disability must submit a physician's certification that he/she can return to work, full duty.

> Efforts will be made to maintain the employee's position, when possible. Due to [St. Joseph Villa's] needs and available personnel there can be no guarantee that the same position will be available upon return to work.

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Id.*

On May 8, 2014, Appellant was absent from work and subsequently submitted a doctor's note from Drexel University College of Medicine that stated Appellant needed to be excused from work until May 31, 2014. *Id.* at ¶22. On May 9, 2014, the Human Resource ("HR") Department of Appellee provided Appellant with the appropriate FMLA forms to apply for FMLA qualifying leave of absence. *Id.* at ¶23. On May 15, 2014, Appellant provided Appellee with the FMLA Certification of Health Care Provider signed by Appellant's healthcare provider. *Id.* at. ¶24. This form certified that Appellant was unable to perform any job functions due to her health condition and would not return to work until May 31, 2014. *Id.* at ¶25.

On May 31, 2014, Appellant did not return to work as estimated by her doctor. *Id.* at ¶¶26-31. Appellee received a doctor's note from Appellant on June 16, 2014, stating that Appellant was still incapacitated until July 31, 2014. *Id.* Pursuant to the FMLA, Appellant's FMLA leave was extended to the maximum allowable under the FMLA at twelve (12) weeks or until approximately July 31, 2014. *Id.* On July 31, 2014, the end of Appellant's FMLA leave, Appellant did not return to work. *Id.* On August 12, 2014, Appellee's HR Department contacted Appellant and informed her that in light of the expiration of her FMLA leave, Appellant could apply for a personal leave of absence to extend her leave of absence by the maximum allowable extension, an additional three months. *Id.*

On August 12, 2014, Appellee provided Appellant with an LOA request form; this form was signed by Appellant and returned to Appellee on August 14, 2014. The form contained the following relevant language:

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Due to [St. Joseph Villa's] needs and available personnel there can be no guarantee that the same position, or any position, will be available when I am able to return to work.

I also realize that failure to report to Human Resources and/or to my Department Head prior to, or on my schedule date of return will result in immediate termination of my employment at Saint Joseph Villa.

*Id.* at ¶¶32-33

On October 27, 2014, Appellee's HR Department contacted Appellant to inform her that Appellant's maximum leave of absence of six months was due to expire in the coming week. *Id.* at ¶¶34-36. Appellant was not able to return to work and did not provide Appellee with an estimated return to work date. *Id.* Furthermore, Appellant failed to provide Appellee with any medical documentation which cleared her to return to work in any capacity. *Id.* On March 31, 2015, Appellant was removed from Appellee's active employee list, more than ten months after Appellant ceased to come to work and five months after Appellant's personal leave of absence expired. *Id.* at ¶38.

Upon a thorough review of the record, and after oral arguments, the trial court determined that Appellant had not produced evidence of acts or facts essential to her cause of action based on alleged violations of the PHRA. By order entered on October 8, 2019, the undersigned granted Appellee's motion for summary judgment and dismissed Appellant's complaint. Appellant filed a notice of appeal on November 7, 2019. On November 13, 2019, the undersigned directed Appellant to file a Concise Statement of Matters Complained of on Appeal ("Concise Statement') pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.), §1925(b). (*See* Court Order, 11/13/19 (#43)).

On December 4, 2019, pursuant to Pa.R.A.P. §1925(b) Appellant filed its timely Concise Statement, raising the following five (5) issues:

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1. Whether the trial court erred in entering summary judgment against Ms. Jarmon.

2. Whether the trial court erred that there is no material issue of fact as to whether the Appellee/Defendant, the Convent of the Sisters of St. Joseph Villa (hereinafter "St. Joseph Villa") violated the Pennsylvania Human Relations Act by failing to provide her an extended leave as a reasonable accommodation for her disability.

3. Whether the trial court erred finding that there was no disputed material issue of fact that St. Joseph Villa's termination of the Ms. Jarmon's employment violated the Pennsylvania Human Relations Act.

4. Whether the trial court erred finding that Plaintiff failed to establish a prima facie claim of disability discrimination under the Pennsylvania Human Relations Act.

5. Whether the trial court erred in finding as a matter of law, that Defendant's termination of the Plaintiff's employment was based upon a legitimate non-discriminatory business reason.

(*See* Concise Statement, 12/4/19 (#45)).

## DISCUSSION

### I.   STANDARD OF REVIEW

When determining if a motion for summary judgment was properly granted, the appellate court is faced with a question of law, and thus its standard of review is de novo and its scope of review is plenary. *City of Philadelphia v. Cumberland County Bd. of Assessment Appeals*, 81 A.3d 24, 44 (Pa. 2013) (citation omitted).

Under the Pennsylvania Rules of Civil Procedure, a trial court may only grant a motion for summary judgment based upon the following standard:

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

*See* Pa.R.C.P.1035.2

Summary judgment may only be granted when it is clear that no genuine issue of material fact exists on the record and that the moving party is entitled to judgment as a matter of law. *Campbell v. Eitak, Inc.,* 893 A.2d 749, 750 (Pa. Super. 2006). The moving party bears the burden of proving that no genuine issue of material fact exists. *Reliance Ins. Co. v. IRPC, Inc.,* 904 A.2d 912, 914 (Pa. Super. 2006). When the non-moving party bears the burden of proof at trial, he may not merely rest upon the pleadings but instead must put forth sufficient evidence to establish a genuine issue of fact. *Murphy v. Duquesne University of the Holy Ghost,* 777 A.2d 418, 429 (Pa. 2001). In deciding a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Beck-Hummel v. Ski Shawnee, Inc.,* 902 A.2d 1266, 1269 (Pa. Super. 2006).

Here, relying on the record and a review in light most favorable to Appellant, Appellant has failed to demonstrate her ability to present a prima facie case for violation of the PHRA. Appellant failed to produce evidence of essential facts to establish a prima facie case of discrimination due to a non-job related disability.

## II. APPELLANT FAILED TO ESTABLISH A PRIMA FACIE CASE FOR DISABILITY DISCRIMINATION UNDER THE PHRA

The PHRA and the ADA deal with similar subject matter and are grounded on similar legislative policy goals. *Imler v. Hollidaysburg American Legion Ambulance Service,* 731 A.2d

Page 6 of 14

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

169, 173-74(Pa. Super. 1999), *appeal denied*, 743 A.2d 920 (Pa. 1999). The PHRA prohibits an employer from discriminating against any employee who has a non-job related handicap or disability. *See* 43 P.S. §951 *et seq.* Although, Pennsylvania courts are not bound by federal courts' interpretations of parallel provisions in the ADA, it may interpret the PHRA in accord with its federal counterparts. *Stultz v. Reese Bros, Inc.*, 835 A.2d 754, 759 (Pa. Super. 2003). Therefore, in order to establish a prima facie case of disability discrimination under the ADA and PHRA, a plaintiff must establish that "s/he (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d. Cir. 2002).

Pursuant to the ADA, under the McDonnell Douglas analysis, a plaintiff must first establish a prima facie case of discrimination. After this is established, a plaintiff creates a rebuttable presumption of discrimination by the employer. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Thereafter, an employer bears the burden of production, meaning a defendant must articulate a legitimate, nondiscriminatory reason ("LNDR") for the adverse employment action. *Id.* at 506-507. Meeting this burden successfully removes the presumption of discrimination, and the plaintiff then bears the ultimate burden of persuasion. *Id.* To prevail at trial, a plaintiff must convince the fact-finder that the defendant's LNDR "was false, *and* that discrimination was the real reason." *Id.* at 515. To merely survive a motion for summary judgment, a plaintiff must present sufficient evidence to allow the fact-finder to reasonably infer that the proffered LNDR was in fact a pretext for discrimination. *See Fuentes v. Perksie*, 32 F.3d 759, 764 (3d Cir. 1994).

**A. Appellant Failed To Meet the Definition of a Qualified Individual with a Disability.**

The PHRA defines "disability" as "any handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in, or has been engaged in." 43 P.S. §954(p). Pursuant to the ADA a "qualified individual" is a person with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C.A. §12111(8). Under the ADA an essential function is considered to be "the fundamental job duties of the employment position that the individual with the disability holds or desires," but not the marginal functions of the job. 29 C.F.R. §1630.2(n)(1). Here, Appellant provided no evidence that she has a disability that does not substantially interfere with her ability to do the job of a CNA.

It has been well settled in Pennsylvania, that in order for a plaintiff to recover under the PHRA, he or she must be able to demonstrate that they are able to perform the essential job functions of the job. *Imler*, 731 A.2d at 173. In the instant action, apart from her own testimony that she could perform the essential functions of a CNA, Appellant failed to provide Appellee with any documentation that medically cleared her to perform the physical demand requirements of the position.[1] Appellant asserts that even if she was unable to perform the essential job duties like transferring and repositioning residents, there were other floors within Appellee's institution that did not require her to perform tasks that required her to meet such physical demands. However, an employer is not required to modify or eliminate an essential function of a job to

---

[1] It is noted that in response to Appellee's motion for summary judgment, Appellant attached Dr. Joshua E. Heller's April 14, 2015 report addressed to another doctor reporting on Appellant's medical status and progress. Appellant relied on this note to support her claim that she was almost ready to return to work two weeks before Appellant was removed from the active employee list.

Page 8 of 14

accommodate its disabled employee. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 671 (3d Cir. 1999). Therefore, Appellant's assertion that she is a qualified individual with a disability pursuant to the PHRA could not be accepted by the trial court.

### B. Appellant Did Not Suffer An Adverse Employment Action Due to Her Disability.

Appellant asserts that she was terminated by Appellee due to her medical disability; however, she has failed to provide evidence to support this essential element to her PHRA claim. Under the ADA, an employer is not required to hold an employee's position open indefinitely. *Watkins v. J & S Oil Co. Inc.*, 164 F.3d 55, 61-2 (1st Cir. 1998).

In *Watkins*, the Plaintiff asserted that his employer discriminated against him on the basis of, *inter alia*, his disability. *Id.* The Court agreed with the district court in finding that the Plaintiff at the end of his leave, failed to show that he was able to return to work or to perform the essential functions of his job without a reasonable accommodation. *Id.* Furthermore, the Court agreed with the district court's findings that the Plaintiff failed to inform his employers when he might be able to return to work nor did the Plaintiff advise them with sufficient specificity that in the immediate future the Plaintiff would be able to resume his job. *Id.* Therefore the Court affirmed the district court's summary judgment in favor of the Plaintiff's employer. *Id.*

Here, Appellant's assertion that her alleged medical condition was a motivating factor in Appellee's decision to terminate her was not supported by the evidence provided. Appellant asserts that she was not notified of her impending termination while on medical leave, however, Appellant was notified by the HR Department when her leave was going to expire. Appellant failed to provide Appellee with any information about when she would be able to return to work in full capacity nor did she request a reasonable accommodation. As held in *Watkins*,

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Appellant's termination while on leave and absent from work for an extended period of time was not sufficient evidence to establish discrimination under the ADA.

As stated *supra*, in considering a motion for summary judgment, Pennsylvania courts require a non-moving party who bears the burden of proof at trial to present some evidence to establish the existence of material facts essential to her PHRA claim, thereby warranting submission of the factual issues to a jury. Pa. R.C.P. 1035.2(2). Based on the lack of evidence provided, the trial court found that Appellant failed to establish a prima facie case of discrimination under the ADA and PHRA.

Due to the failure to establish a prima facie case of discrimination, the trial court did not consider Appellant's allegation that Appellee failed to provide a reasonable accommodation to Appellant and her disability. However, assuming arguendo that Appellant did establish a prima facie case of discrimination with the burden shifting to Appellee, the record before trial court demonstrated that Appellee had a legitimate, non-discriminatory reason for the adverse employment action against Appellant.

### C. Appellee's Legitimate, Nondiscriminatory Reason.

As stated previously, assuming that the plaintiff has met her burden of establishing *prima facie* case, the McDonnell Douglas analysis creates a rebuttable presumption of discriminatory motive for the employer's adverse employment action. This presumption is removed, however, once the defendant meets its burden of production by offering some LNDR to justify its actions. This burden of production is low and does not relieve the plaintiff from proving that discrimination was the "but for" cause of the employment action. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 178 (2009).

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion).

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citations omitted).

Here, Appellee's LNDR for terminating Appellant was that she failed to provide medical documentation stating her ability to return to work as required under Appellee's LOA policy and other applicable employment practices and procedures.[2] Due to these reasons Appellant was removed from the active employee list. The trial court deemed Appellee's reason to be legitimate and to satisfy the burden under the statute. Therefore, the burden shifted back to Appellant to persuade the fact-finder that the LNDR offered by Appellee was mere pretext. *Jakimas v. Hoffmann- La Roche, Inc.*, 485 F.3d 770, 786 (3d Cir. 2007). Appellant failed to satisfy this burden.

In order for an individual to survive a motion for summary judgment, they must provide the trial court with enough evidence to allow a reasonable inference that the LNDR was a pretext used as legal cover for the true and presumptively unlawful, motivating factor. *Fuentes*, 32 F.3d at 764. To discredit an employer's proffered reason, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons...that a reasonable factfinder could

---

[2] Appellee's LOA policy required Appellant to advise Appellee of the estimated return to work date, and provide medical clearances.

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

rationally find them unworthy of credence." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531.

Appellant argues that after being terminated or removed from the active list on March 31, 2015, she was ready to return to work within two weeks thereafter. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Mem. of Law, p. 8. Appellant further claims that Appellee had numerous CNAs on staff and there was no hardship to hold Appellant's job open to her. *Id.*

To the contrary, all of the evidence of record indicates that Appellee followed an established leave of absence protocol that Appellant was aware of while an employee for Appellee. *See* Def.'s Mot. for Summ. J., Exs. I, J, and P. Pursuant to the leave of absence protocol derived from Appellee's employee handbook, Appellant failed to provide a return to work date after the personal leave of absence expired at the beginning of November 2014. *See* Def.'s Mot. for Summ. J., Ex. O. Furthermore, Appellant provides no evidence to support the claim that Appellee suffers no hardship to maintain Appellant's position for over ten months. From the start of Appellant's leave in May, 2014 to the expiration in November, 2014, Appellant failed to provide Appellee a return to work date or any medical clearance to return to work in any capacity. *Id.* Appellee is not required by the PHRA to hold Appellant's position open indefinitely.

Finally, Appellant contends that she notified Appellee of her medical condition, but took no action to address said condition. Appellant contends that Appellee's failure to engage in an "interactive process" to determine potential accommodations for her disability demonstrates Appellee's discriminatory intent.

It is indisputable that an employee who requires accommodation due to a disability is responsible for requesting a reasonable accommodation. *Colwell v. Rite Aid Co.*, 602 F.3d 495,

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

506-7 (3d Cir. 2010). Once this occurs, only then does an employer have the obligation to initiate an interactive process to determine if the employee can perform the essential job functions with reasonable accommodation. *Canteen Corp. v. Pa. Human Relations Comm'n*, 814 A.2d 805, 813 (Pa. Cmwlth. 2003) (citation omitted). Here, Appellee was never obligated to engage in an interactive process as Appellant failed to request a reasonable accommodation.

It is clear on the record that Appellant alerted Appellee to her medical condition that required her to take a leave of absence. In Appellant's Second Amended Complaint, she alleges that during her medical leave from work she submitted a request for a reasonable accommodation to return to work as a medical technician. However, upon completion of discovery, Appellant provided no evidence that she requested any form of accommodation. In fact, during her deposition Appellant explicitly admitted that she never requested the specific reasonable accommodation or any reasonable accommodation. (See Exhibit "F" at 60:13-22, Defendant's Motion for Summary Judgment, 6/24/19 (#31)).

## CONCLUSION

In viewing all of the evidence in the light most favorable to Appellant, the trial court did not find that there was evidence to support Appellant's claims of discrimination. Appellant bears the burden of proof at trial and she failed to offer any evidence to establish a genuine issue of material fact that her termination was based on unlawful discriminatory bases. Further, Appellant failed to produce evidence of facts essential to her PHRA claim which would warrant the submission of the case to a jury.

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

For all the aforementioned reasons, it is respectfully submitted the trial court did not commit an error of law in granting Appellee's motion for summary judgment and thus it submits that its October 8, 2019 order should be affirmed.

RESPECTFULLY SUBMITTED,

_____

**STEVEN C. TOLLIVER, SR., J.**

**This Opinion has been E-Filed on 1/3/20**

Copy sent **By Interoffice Mail:**
Court Administration – Civil Division

_____
Judicial Secretary

Case# 2017-18288-46 Docketed at Montgomery County Prothonotary on 01/03/2020 2:04 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.